J-A19006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EUGENE JAMES MCCARTHY, JR. | |
| Appellant | No. 11 WDA 2014 |

Appeal from the Judgment of Sentence November 18, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0011401-2012

BEFORE:  BENDER, P.J.E., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                **FILED JANUARY 15, 2016**

Appellant Eugene James McCarthy appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas following his jury trial convictions for robbery (inflicts serious bodily injury),[1] conspiracy to commit robbery (inflicts serious bodily injury),[2] and third-degree murder.[3]  After careful review, we affirm.

On August 7, 2012, Appellant, Quintelle Rankin, and Rankin's nephew, Corey Estes, were driving around in Appellant's car looking for a marijuana source.  N.T., 8/5-16/2013, ("N.T.") at 169, 176, 178, 179.  While they were

_____

[1] 18 Pa.C.S. § 3701(a)(i).

[2] 18 Pa.C.S. § 903.

[3] 18 Pa.C.S. § 2502(c).

in the car, Appellant, who was driving near the Brinton Manor Apartment area said that it looked "like there was licks up there." N.T. at 183. Estes testified that "licks" is street slang for "robbery." N.T. at 184. Appellant parked the car and the trio began to walk around looking for people with marijuana. N.T. at 187, 1372.

Appellant and his comrades encountered two males sitting on the steps of one of the apartment buildings. N.T. at 188, 1373. One of the males, Brandon Johns ("Victim"), said that he had marijuana and the trio followed him to a nearby building. N.T. at 190-91, 1374. When the four of them were in the building hallway, Victim sat on the steps, pulled out a bag of marijuana and a scale, and began to weigh out some marijuana for $20.00 per gram, as they had discussed. N.T. at 192-94, 1372. Appellant proceeded to grab the entire bag of marijuana and said: "You might as well give me all the shit." N.T. at 197. Rankin and Victim then produced guns and exchanged gunfire. N.T. 198-205, 1426. While he was shooting, Rankin closed his eyes while firing his gun at Victim's chest and shoulder area. N.T. at 1425. Victim died from multiple gunshot wounds to the neck and chest. N.T. at 78.

On August 19, 2013, a jury convicted Appellant of the aforementioned crimes and acquitted Appellant of second-degree murder and tampering with

evidence.[4]  On November 18, 2013, the trial court sentenced Appellant to thirteen (13) to twenty-six (26) years' incarceration.[5]

On December 2, 2013, Appellant filed a post-sentence motion, which the court denied the next day.[6]  On December 31, 2013, Appellant timely filed a notice of appeal.  Both Appellant and the trial court complied with Pa.R.A.P. 1925.[7]

Appellant raises the following issues for our review:

> 1. WAS APPELLANT ERRONEOUSLY CONVICTED OF THIRD[-]DEGREE MURDER AND OF ROBBERY VIA SERIOUS BODILY INJURY INFLICTED OR THREATENED GIVEN THAT THE COMMONWEALTH FAILED TO PROVE, BEYOND A REASONABLE DOUBT, THAT APPELLANT'S CO-DEFENDANT, QUINTELLE RANKIN, DID NOT ACT

_____

[4] The same jury convicted Rankin of second-degree murder, robbery (serious bodily injury), criminal conspiracy (robbery), and carrying a firearm without a license and acquitted Rankin of first-degree murder.

[5] The court sentenced Appellant consecutively to ten (10) to twenty (20) years' incarceration for third-degree murder and three (3) to six (6) years' incarceration for conspiracy to commit robbery.  The court imposed no further penalty for Appellant's robbery conviction.

[6] November 28, 2013 fell on Thanksgiving Day. Because Appellant filed his post-sentence motion on the following Monday, we consider his motion timely.  *See* 1 Pa.C.S. § 1908.

[7] On January 2, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  On January 23, 2014, Appellant filed a motion for an extension of time to file his concise statement, which the court granted on January 29, 2014.  Appellant filed an additional motion for an extension of time to file his statement on February 24, 2014, which the court again granted.  On April 7, 2014, Appellant timely filed his Pa.R.A.P. 1925(b) statement.  The court filed a Pa.R.A.P. 1925(a) opinion on July 18, 2014.

JUSTIFIABLY WHEN HE SHOT AND KILLED THE DECEDENT, BRANDON JOHNS (SUCH ACTION BEING JUSTIFIABLE SINCE IT WAS TAKEN IN DEFENSE OF HIMSELF AND OF APPELLANT)?

2. WAS APPELLANT ERRONEOUSLY CONVICTED OF THIRD DEGREE MURDER GIVEN THAT THE COMMONWEALTH FAILED TO PROVE, BEYOND A REASONABLE DOUBT, THAT APPELLANT WAS VICARIOUSLY LIABLE FOR BRANDON JOHNS' DEATH UNDER EITHER THE RULE OF ACCOMPLICE LIABILITY OR THE RULE OF CONSPIRATORIAL LIABILITY, GIVEN THAT (A) APPELLANT DID NOT ACT WITH RECKLESSNESS OR EXTREME INDIFFERENCE TO THE VALUE OF HUMAN LIFE, AS WAS NECESSARY IN ORDER TO CONVICT HIM OF THIRD DEGREE MURDER UNDER THE RULE OF ACCOMPLICE LIABILITY; (B) THE RULE OF CONSPIRATORIAL LIABILITY DID NOT SURVIVE THE ENACTMENT OF THE CRIMES CODE; AND (C) EVEN IF CONSPIRATORIAL LIABILITY WAS A VIABLE OPTION, QUINTELLE RANKIN'S FATAL SHOOTING OF JOHNS WAS NOT FORESEEABLE TO APPELLANT SINCE APPELLANT WAS UNAWARE, SO FAR AS THE EVIDENCE INDICATED, THAT RANKIN WAS EVEN ARMED?

3. WAS APPELLANT (A) ERRONEOUSLY CONVICTED OF ROBBERY VIA SERIOUS BODILY INJURY INFLICTED OR THREATENED GIVEN THAT THE COMMONWEALTH FAILED TO PROVE, BEYOND A REASONABLE DOUBT, THAT APPELLANT WAS VICARIOUSLY LIABLE FOR RANKIN'S FATAL SHOOTING OF JOHNS (APPELLANT, AS NOTED, BEING UNAWARE THAT RANKIN WAS ARMED), AND (B) ERRONEOUSLY CONVICTED OF CONSPIRACY TO COMMIT ROBBERY VIA SERIOUS BODILY INJURY INFLICTED OR THREATENED GIVEN THAT THE COMMONWEALTH FAILED TO PROVE, BEYOND A REASONABLE DOUBT, THAT THE PARTIES AGREED TO COMMIT A CRIME AND, IF THEY DID, THAT THAT CRIME WAS ROBBERY VIA SERIOUS BODILY INJURY INFLICTED OR THREATENED RATHER THAN ROBBERY VIA PHYSICAL FORCE?

4. WERE APPELLANT'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I § 9 OF THE PENNSYLVANIA CONSTITUTION VIOLATED WHEN HE WAS

CONVICTED OF THIRD DEGREE MURDER, ROBBERY VIA SERIOUS BODILY INJURY INFLICTED, AND CONSPIRACY TO COMMIT ROBBERY VIA SERIOUS BODILY INJURY INFLICTED OR THREATENED BASED ON LEGALLY INSUFFICIENT EVIDENCE?

Appellant's Brief at 3-4.

In all of his issues, Appellant challenges the sufficiency of the evidence. When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Hansley***, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting ***Commonwealth v. Jones***, 874 A.2d 108, 120-21 (Pa.Super.2005)).

In his first issue, Appellant claims the Commonwealth failed to present sufficient evidence for the jury to find, beyond a reasonable doubt, that Rankin did not act in self-defense when he shot Victim. We disagree.

Pennsylvania's Crimes Code governs self-defense and provides, in relevant part:

**§ 505. Use of force in self-protection**

**(a) Use of force justifiable for protection of the person.--**The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.—**

＊　＊　＊

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S. § 505.

To establish a claim of self-defense, a defendant must prove three elements: "(a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat." ***Commonwealth v. Mouzon***, 53 A.3d 738, 740-41 (Pa.2012) (internal footnotes omitted). Although the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense, "before the defense is properly in issue, there must be some evidence, from whatever source, to justify such a finding." ***Id.*** at 741.

> To claim self-defense, the defendant must be free from fault in provoking or escalating the altercation that led to the offense, before the defendant can be excused from using deadly force. Likewise, the Commonwealth can negate a self-defense claim by proving the defendant used more force than reasonably necessary to protect against death or serious bodily injury.

***Commonwealth v. Smith***, 97 A.3d 782, 788 (Pa.Super.2014) (internal citations and emphasis omitted).

Appellant contends that the Commonwealth offered no evidence to show that Appellant or his co-felons planned to kill Victim. He maintains that Appellant's tussle with Victim over Victim's firearm did not constitute a threat that would qualify as provoking or escalating the altercation that led to the offense. Further, he claims that, although Rankin brandished a gun

prior to Victim's firing the first shot, Rankin's gun did not provoke Victim because Victim could not see Rankin's gun.

Here, both Rankin and Estes testified that Victim fired the first shot. Rankin testified that Victim started shooting for an unknown reason, while Appellant was giving him money for the marijuana, and that Rankin pulled out his gun in self-defense. N.T. at 1376. Estes testified, however, that Rankin and Appellant intended to rob Victim, that Rankin pulled out his gun before Victim pulled out his gun, and that immediately after Rankin brandished his gun, Victim told Appellant that he could have all of the marijuana. N.T. at 203. Rankin also testified that he did not believe Victim could see that Rankin was brandishing a gun at the time. N.T. at 202.

When viewing all evidence in the light most favorable to the Commonwealth as verdict winner, there was sufficient evidence for the jury to find that Rankin was not free from fault in provoking or escalating the altercation that led to Victim's death. The jury, who was free to believe all, part, or none of the evidence, chose to believe part of Estes' testimony and found that Rankin was not free from fault such that he was excused from using deadly force. The evidence that Rankin brandished a gun while Appellant was demanding Victim give him his marijuana, that Victim gave Appellant his marijuana immediately after Rankin brandished the gun, and that Rankin shot Victim seven times supports the jury's findings. Thus, the Commonwealth presented sufficient evidence for the jury to find, beyond a

reasonable doubt, that Rankin did not act in self-defense when he shot and killed Victim. **See Hansley, supra; Smith, supra.**

For purposes of disposition, we will next address Appellant's third issue.

In his third issue, Appellant challenges the sufficiency of the evidence for his robbery (inflicts serious bodily injury) and his conspiracy to commit robbery (inflicts serious bodily injury) convictions. He claims that, because the Commonwealth did not present evidence that Appellant knew Rankin was armed, there was not sufficient evidence for the jury to find that he was an accomplice to robbery (inflicts serious bodily injury) or to find that he was a co-conspirator to such a crime. He claims the evidence at most supported a conviction for theft or robbery (physical force) and conspiracy to commit such lesser crime. Again, we disagree.

Appellant was convicted under the following statute:

> **§ 3701. Robbery**
>
> **(a) Offense defined.**--
>
>> (1) A person is guilty of robbery if, in the course of committing a theft, he:
>>
>>> (i) inflicts serious bodily injury upon another;
>>>
>>> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
>>>
>>> (iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

(v) physically takes or removes property from the person of another by force however slight; or

18 Pa.C.S. § 3701.

To sustain a conviction of robbery, the Commonwealth must establish beyond a reasonable doubt that [a defendant], in the course of committing a theft, inflicted serious bodily injury upon [a victim], or threatened him with or intentionally put him in fear of immediate serious bodily injury. 18 [Pa.C.S.] § 3701(a). The element "in the course of committing a theft" is proven if the Commonwealth proves that the offense occurred during an attempt to commit theft or in flight after the attempt or commission. 18 [Pa.C.S.] § 3701(a)(2).… A person commits a theft if he or she "unlawfully takes... movable property of another with intent to deprive him thereof." 18 [Pa.C.S.] § 3921(a).

*Commonwealth v. Ennis*, 574 A.2d 1116, 1119 (Pa.Super.1990).

The jury found Appellant guilty of robbery under § 3701(a)(1)(i) based on the theory of accomplice liability.[8] The Crimes Code provides, in relevant part:

**§ 306. Liability for conduct of another; complicity**

**(a) General rule.--**A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

_____

[8] The trial court instructed the jury on theories of direct liability, accomplice liability and co-conspirator liability. It is only necessary for us to examine the theory of accomplice liability to determine whether the Commonwealth presented sufficient evidence to support Appellant's robbery conviction.

**(b) Conduct of another.--**A person is legally accountable for the conduct of another person when:

\* \* \*

(3) he is an accomplice of such other person in the commission of the offense.

**(c) Accomplice defined.--**A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

\* \* \*

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

**(d) Culpability of accomplice.--*When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.***

\* \* \*

**(g) Prosecution of accomplice only.--**An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted.

18 Pa.C.S. § 306 (emphasis added).

Here, the Commonwealth presented evidence that Appellant unlawfully took Victim's marijuana with the intent to deprive him thereof and that Rankin shot and killed Victim during the commission of the theft. Thus, there was sufficient evidence for the jury to convict Rankin of robbery under § 3701(a)(1)(i).

Appellant maintains that because the Commonwealth did not present evidence that Appellant was aware that Rankin had a gun, it failed to present evidence of the requisite culpability to be an accomplice to § 3701(a)(1)(i) robbery. However, the only mens rea this crime required was the intent to commit the underlying theft. The Commonwealth presented evidence that Appellant aided Rankin in committing the robbery. Although Rankin pulled the trigger that caused the serious bodily injury (death) to Victim, § 3701(a)(1)(i) does not require that the perpetrator intend to inflict serious bodily injury, it only requires that the perpetrator inflict serious bodily injury. The only mens rea required for this crime was the intent to steal Victim's marijuana, and the Commonwealth presented evidence of this intent. Thus, the Commonwealth presented sufficient evidence for the jury to find Appellant guilty of § 3701(a)(1)(i) robbery under the theory of accomplice liability.

Next, Appellant challenges the sufficiency of the evidence for his conspiracy conviction. Our legislature defines criminal conspiracy as follows:

> **(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a

crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

**(b) Scope of conspiratorial relationship.--**If a person guilty of conspiracy, as defined by subsection (a) of this section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, to commit such crime whether or not he knows their identity.

\*   \*   \*

**(e) Overt act.--**No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

\*   \*   \*

**(g) Duration of conspiracy.--**For purposes of 42 Pa.C.S. § 5552(d) (relating to commission of offense):

(1) conspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired;

(2) such abandonment is presumed if neither the defendant nor anyone with whom he conspired does any overt act in pursuance of the conspiracy during the applicable period of limitation; and

(3) if an individual abandons the agreement, the conspiracy is terminated as to him only if and when he advises those with whom he conspired of his abandonment or he informs the law enforcement authorities of the existence of the conspiracy and of his participation therein.

18 Pa.C.S. § 903.

Here, the Commonwealth presented evidence that Appellant acted together with Rankin with the intent of unlawfully depriving Victim of his marijuana. Appellant made an overt act by demanding Victim's marijuana and Rankin inflicted serious bodily injury (for which no intent was required), namely death, in the furtherance of the conspiracy to steal the marijuana. Appellant made no attempt to abandon the agreement before Victim was dead. Thus, the Commonwealth presented sufficient evidence to support Appellant's conviction of conspiracy to commit § 3701(a)(1)(i) robbery.

Now we address Appellant's second issue, in which he challenges the sufficiency of the evidence for his conviction for third degree murder. Murder is defined by statute as follows:

**2502. Murder**

**(a) Murder of the first degree.--**A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

**(b) Murder of the second degree.--**A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged **as a principal or an accomplice** in the perpetration of a felony.[9]

_____

[9] The Crimes Code defines "perpetration of a felony" as:
_(Footnote Continued Next Page)_

**(c) Murder of the third degree.--**All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

18 Pa.C.S. § 2502 (emphasis added).

To consider a killing murder, malice must be present:

At the common law murder is described to be, when a person of sound memory and discretion unlawfully kills any reasonable creature in being and under the peace of the Commonwealth, with malice aforethought, expressed or implied. The distinguishing criterion of murder is malice aforethought. But it is not malice in its ordinary understanding alone, a particular ill-will, a spite or a grudge. Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Murder, therefore, at common law embraces cases where no intent to kill existed, but where the state or frame of mind termed malice, in its legal sense, prevailed.

***Commonwealth v. Drum***, 58 Pa. 9, 15 (1868).

For second degree murder, "[t]he malice or intent to commit the underlying crime is imputed to the killing to make it second-degree murder,

*(Footnote Continued)* ─────────────────

The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit ***robbery***, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping.

18 Pa.C.S. § 2502(d) (emphasis added).

regardless of whether the defendant actually intended to physically harm the victim." ***Commonwealth v. Lambert***, 795 A.2d 1010, 1022 (Pa.Super.2002), *appeal denied*, 805 A.2d 521 (Pa.2002).

> When an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule, allows the finder of fact to infer the killing was malicious from the fact ***the actor was engaged in a felony of such a dangerous nature to human life*** because the actor, as held to the standard of a reasonable man, ***knew or should have known that death might result from the felony***….
>
> In ***Commonwealth v. Melton***, 178 A.2d 728, 731 ([Pa.]1962), *cert. denied*, 371 U.S. 851, 83 S.Ct. 93, 9 L.Ed.2d 87 (1962), our Supreme Court explained that not only the killer, but ***all participants in a felony***, including the getaway driver, ***are equally guilty of felony murder*** when a killing by a felon occurs.
>
> The statute defining second degree murder does not require that a homicide be foreseeable; rather, ***it is only necessary that the accused engaged in conduct as a principal or an accomplice in the perpetration of a felony***. Whether evidence sufficiently indicates that a killing was in furtherance of a predicate felony can be a difficult question. ***Commonwealth v. Laudenberger***, 715 A.2d 1156, 1160 (Pa.Super.1998). The question of whether the killing was in furtherance of the conspiracy is a question of proof for the jury to resolve. [***Commonwealth v. Middleton***, 467 A.2d 841, 848 (Pa.Super.1983)]. It ***does not matter whether the appellant anticipated that the victim would be killed in furtherance of the conspiracy***. ***Id.*** Rather, the fact finder determines whether the appellant knew or should have known that the possibility of death accompanied a dangerous undertaking. [***Id.***]

***Lambert***, 795 A.2d at 1023 (some internal citations omitted) (emphasis added).

- 16 -

"In adjudging a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is *malice* and *not the act of killing*." *Commonwealth v. Redline*, 137 A.2d 472, 476 (Pa.1958) (emphasis in original). "[I]t is the general rule of law that a person may not be held criminally responsible for a killing unless the homicide were either actually or constructively committed by him; and, in order to be his act, it must be committed by his own hand, or by someone acting in concert with him, or in furtherance of a common design or purpose." *Id.* at 479.

> A person may be convicted of third-degree murder where the murder is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice aforethought. Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

*Commonwealth v. Pigg*, 571 A.2d 438, 441-42 (Pa.Super.1990), *appeal denied*, 581 A.2d 571 (Pa.1990) (internal quotations and citations omitted).

> The elements of third degree murder, as developed by case law, are a killing done with legal malice but without specific intent to kill required in first degree murder. Malice is the essential element of third degree murder, and is the distinguishing factor between murder and manslaughter.

*Commonwealth v. Cruz–Centeno*, 668 A.2d 536, 539 (Pa.Super.1995). *appeal denied,* 676 A.2d 1195 (Pa.1996).

> [E]vidence of intent to kill is simply irrelevant to third degree murder. The elements of third degree murder absolutely include an intentional *act,* but not an act defined

by the statute as intentional murder. The act sufficient for third degree is still a purposeful one, committed with malice, which results in death—clearly, one can conspire to such an intentional act.

***Commonwealth v. Fisher***, 80 A.3d 1186, 1191 (Pa.2013), *cert. denied sub nom.* ***Best v. Pennsylvania***, 134 S. Ct. 2314, 189 L. Ed. 2d 192 (2014) (emphasis in original).

Here, Appellant was convicted of conspiracy to commit robbery (serious bodily injury inflicted), robbery (serious bodily injury inflicted), and third-degree murder, and Appellant's co-conspirator was convicted of conspiracy to commit robbery, robbery, carrying a firearm without a license, and second-degree murder. The jury acquitted Appellant of second-degree murder.

The requisite malice for second-degree murder can be inferred by the underlying felonious act, and Appellant was convicted of robbery (inflicts serious bodily injury), which is an enumerated felony in the statute. Thus, the jury could have convicted him of second-degree murder. ***See Lambert, supra.***

Appellant claims that because the Commonwealth did not prove Appellant was aware of his co-conspirator's weapon,[10] it did not establish that Appellant acted with malice. Appellant contends that accomplice

_____

[10] We need not now determine whether the Commonwealth presented sufficient evidence that Appellant knew his co-conspirator was armed.

liability does not render him culpable for a homicide that results from a robbery in which he was an accomplice if he was not aware that his accomplice was armed. Appellant quotes **Commonwealth v. Knox**, 105 A.3d 1194 (Pa.2014), for the following proposition:

> After the passage of the Crimes Code, status as an accomplice relative to some crimes within a larger criminal undertaking or episode no longer *per se* renders a defendant liable as an accomplice for all other crimes committed. Rather, closer, offense-specific analysis of intent and conduct is required.

**Knox**, 105 A.3d at 1197; Appellant's Brief at 33. Appellant, however, omits the following attendant footnote: "There are statutory exceptions to this principle, most notably, the felony-murder rule. **See** 18 Pa.C.S. § 2502(b)." **Id.** at 1197, n. 3.[11]

Although the jury did not convict Appellant of second-degree murder, it convicted him of robbery. As a result, the Commonwealth presented sufficient evidence for the jury to conclude that Appellant exhibited malice by committing a robbery during which a victim was recklessly killed. **See**

---

[11] In footnote 13, the dissent notes that the crime of conspiracy is not an enumerated felony in the Crimes Code for purposes of the felony-murder rule. In addition to conspiracy, however, a jury convicted Appellant, either under direct or accomplice liability, of robbery, inflicts serious bodily injury, which is an enumerated felony. The robbery statute does not require that a felon intend to inflict serious bodily injury on another; it only requires that serious bodily injury be inflicted while one is in the course of committing a theft. Because Appellant's accomplice killed Victim while Appellant was committing an enumerated felony, it is of no moment whether death was the natural and probable consequence of Appellant's robbery.

*Lambert, supra.*  The fact that the jury acquitted Appellant of second-degree murder does not mean it did not find the requisite malice for the offense.[12]

The trial court instructed the jury as follows:

> A person who kills must act with malice to be guilty of any degree of murder.
>
> The word "malice," as I am using it, has a special legal meaning.  It does not mean simply hatred, spite or ill will.  Malice is a shorthand way of referring to any of the three different mental states that the law regards as being bad enough to make a killing murder.
>
> The type of malice differs for each degree of murder.  Thus, for murder of the first degree, a killing is with malice if the perpetrator acts with:  First, an intent to kill, or as I will later explain in my definition of first-degree murder, the killing is willful, deliberate and premeditated.
>
> For murder of the second degree or felony murder, as second-degree murder is commonly called, a killing is with malice if the perpetrator engages in one of certain enumerated felonies and a killing occurs, since the law, through the felony murder rule, allows the finder of fact to infer that the killing was malicious from the fact that the actor was engaged in a felony of such a dangerous nature to human life that the perpetrator, as held to the standard of a reasonable man, knew or should have known that death might result from the felony.

_____

[12] "[A]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence, and that even where two verdicts are logically inconsistent, such inconsistency alone cannot be grounds for a new trial or for reversal. Furthermore, the 'special weight' afforded the fact of an acquittal plays no role in the analysis of inconsistent verdicts, because, by definition, one of the verdicts will always be an acquittal." *Commonwealth v. Miller*, 35 A.3d 1206, 1213 (Pa.2012).

For murder of the third degree, a killing is with malice if the perpetrator's actions show his wanton and willful disregard of an unjustified and extremely high risk that his conduct would result in death or serious bodily injury to another. In this form of malice the Commonwealth need not prove that the perpetrator specifically intended to kill another.

The Commonwealth must prove, however, that he took action while consciously; that is knowingly, disregarding the most serious risk he was creating and that by his disregard of that risk he demonstrated his extreme indifference to the value of human life.

\* \* \*

You may find that [Appellant] was acting with malice if you are satisfied beyond a reasonable doubt that he and the other Defendants were partners in committing the robbery. Because robbery is a crime inherently dangerous to human life, there does not have to be any other proof of malice.

N.T., 8/5-16/2013, at 1699-1701, 1704.

At sentencing, the court noted:

I think the evidence presented and the jury's verdict supports the view of this case that while [Appellant] agreed to get involved in an armed robbery, he did not expect his co-defendant to execute [Victim] as he did. And we are to sentence defendants on what their legally responsible conduct is.

And there is no other reason the court can think of why the jury would come back on murder of the third degree on [Appellant], as opposed to murder in the second degree, that they didn't feel that to some degree Mr. Rankin even acted beyond what [Appellant] expected, or what was planned on.

I think [Appellant] is entitled to the benefit of the differences in the verdict.

Sentencing Transcript, 11/18/2013, at 69-70.

- 21 -

To sustain a verdict for third-degree murder, the Commonwealth needed to present sufficient evidence that Appellant acted with malice and that his actions resulted in the death of another person. *See Cruz–Centeno, supra.*

Malice is a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty". *Drum, supra.* Malice is imputed into a second-degree murder conviction when a defendant commits certain enumerated felonies because those certain enumerated offenses indicate the requisite recklessness of consequences and mind regardless of social duty of which malice consists. Just because the jurors did not convict Appellant of second-degree murder, as they could have done, does not mean Appellant lacked the malice that resulted in this robbery-induced homicide. Because a homicide occurred while Appellant was committing the enumerated offense of robbery, Appellant exhibited the "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and… mind regardless of social duty" required to find malice for purposes of third degree murder. Thus, the Commonwealth presented sufficient evidence for the jury to find, beyond a reasonable doubt, that Appellant committed third-degree murder.

Accordingly, Appellant's claims merit no relief.[13]

Judgement of sentence affirmed.

Judge Musmanno joins in the memorandum.

President Judge Emeritus Bender files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/15/2016

---

[13] Due to the disposition of Appellant's first three claims, we need not address his final claim.